MATTHEW D. CHURCH #15574
KENDRA M. BROWN #16409
TAYLOR P. KORDSIEMON #17257
**MANNING CURTIS BRADSHAW**
**& BEDNAR PLLC**
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
(801) 363-5678
mchurch@mc2b.com; kbrown@mc2b.com
tkordsiemon@mc2b.com
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ERIC SCHRIEVER,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER CESAR EVANGELISTA of Lone Peak Police Department, OFFICER K. NEWELL of Lone Peak Police Department, CHIEF BRIAN K. WILLIAMS of Lone Peak Police Department, LONE PEAK PUBLIC SAFETY DISTRICT, and ALPINE CITY, in Utah County, Utah,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00013-AMA-DBP<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Dustin B. Pead |

Before the Court is the Motion to Dismiss ("Motion") brought by Defendants Officer Cesar Evangelista, Officer K. Newell, Chief Brian J. Gwilliam,[1] Lone Peak Public Safety District ("Lone Peak"), and Alpine City (collectively "Defendants"), filed on February 28, 2025.[2] The Motion is

---

[1] The caption of Plaintiff's Complaint names "Chief Brian K. Williams" as a defendant, but the body of the Complaint refers to "Chief Brian G. Williams." *See* Compl. [ECF 1] ¶ 4 (p. 3). Neither accurately names the Chief of the Lone Peak Police Department, Brian J. Gwilliam. *See Department Roster*, LONE PEAK POLICE DEP'T (last accessed Feb. 26, 2025), https://lonepeakpolice.com/roster/. The Court assumes the misnaming of Chief Gwilliam is the result of a typographical error and refers to Chief Gwilliam by his correct name herein.

[2] ECF No. 32.

fully briefed.[3] The Court has carefully reviewed the Complaint, all briefing on the Motion, and the relevant legal authorities.

On July 3, 2025, the Court notified the parties through the Court's ECF system that it would hear oral argument on the Motion on August 22, 2025 beginning at 10:00 a.m. Each of the attorneys of record received the July 3, 2025 notice of the hearing. On August 22, 2025, Defendants' counsel—Matthew D. Church, Kendra M. Brown, and Taylor P. Kordsiemon—appeared for oral argument. Plaintiff's counsel did not appear. The Court's deputy clerk contacted Plaintiff's counsel regarding his absence, and he informed the Court that he overlooked the notice of oral argument. The Court advised Plaintiff's counsel the Court could delay the hearing for fifteen minutes if he could make it to the oral argument. Counsel[[4]] *declined that offer*~~indicated he would not be able to appear in that amount of time~~. Given that the Court had carefully reviewed the Complaint, all briefing on the Motion, and the relevant legal authorities, the Court determined that it would proceed with oral argument despite the absence of Plaintiff's counsel.

For the reasons set forth in the Court's oral ruling, which is incorporated herein, and as further explained below, the Court hereby GRANTS Defendants' Motion to Dismiss.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads

---

[3] ECF Nos. 32, 36, & 37.
[4] As indicated in the caption on page one, this Order was prepared by counsel. To the extent the Court has made material changes to the Order, it has done so by striking through text the Court declines to adopt and italicizing the text added, as in the edit following this footnote.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When determining the sufficiency of a complaint's allegations, a court must accept all well-pleaded allegations as true and grant all reasonable inferences in the plaintiff's favor. *Wyoming v. United States Dep't of Interior*, 839 F.3d 938, 942 (10th Cir. 2016). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In addition, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A Rule 12(b)(1) motion to dismiss may take the form of "a facial attack on the complaint's allegations as to subject-matter jurisdiction" by "question[ing] the sufficiency of the complaint." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Central Green Co. v. United States*, 531 U.S. 425 (2001). When "reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.*

## DISCUSSION

Plaintiff has brought five causes of action. His claims for violations of his Fourth and Fourteenth Amendment rights under the U.S. Constitution and Article I, Section 14 of the Utah Constitution,[5] failure to intervene, and *Monell* liability each are brought under 42 U.S.C. § 1983

---

[5] Article I, Section 14 of the Utah Constitution is the state counterpart to the Fourth Amendment. "[B]ecause the state constitutional provision reads nearly verbatim with the fourth amendment, [the Utah Supreme Court] has never drawn any distinctions between the protections afforded by the respective constitutional provisions but has, instead, always considered the protections afforded to be one and the same." *See State v. Williamson*, 2024 UT App 141, ¶ 27 n.1, 558 P.3d 143 (cleaned up). Therefore, because the federal and state constitutional claims do not differ in any meaningful respect, this Court addresses only the federal constitutional claim and dismisses the state constitutional claim for the same reasons.

3

(the "constitutional claims"). Plaintiff has also raised two state-law tort claims for intentional infliction of emotional distress and battery.

In his Opposition, Plaintiff did not oppose the Motion with respect to the state-law tort claims and otherwise conceded that his "state law claims are not in compliance with Utah requirements" under the Governmental Immunity Act of Utah.[6] Plaintiff further agreed that "Plaintiff's well ple[d] complaint does not aver Alpine City has any responsibility for the training, hiring, or discipline" of Lone Peak police officers and "concede[d] the complaint is deficient regarding Alpine City as a defendant."[7] Accordingly, the state-law tort claims are dismissed, and all claims against Alpine City are dismissed.

Plaintiff did oppose dismissal of his constitutional claims, but the Court dismisses those claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. PLAINTIFF DID NOT ALLEGE A VIOLATION OF CLEARLY ESTABLISHED RIGHTS.

Plaintiff's constitutional claims center on his allegation that he was wrongfully arrested inside his home without a warrant and without exigent circumstances in violation of the Fourth Amendment. ~~The question before the Court is whether Plaintiff was arrested in a "public place" when he stood in the doorway of his residence speaking to the Officers, he began to step backward, the Officers ordered him not to retreat, and then Officer Evangelista grabbed him by the arm and pulled him out of the residence to effectuate an arrest.~~ Under United States Supreme Court precedent, ~~Plaintiff was in a public place and~~ no constitutional violation occurred. But even assuming there was a constitutional violation, the Officers are entitled to qualified immunity

---

[6] ECF No. 36 at 24–25; *see also* ECF 32 at 12–13.
[7] ECF No. 36 at 24.

because the right to be free from warrantless arrests under these circumstances was not clearly established.

In *United States v. Watson*, 423 U.S. 411 (1976), the Supreme Court held that police may conduct warrantless arrests in public so long as there is probable cause. *Id.* at 423. But in *Payton v. New York*, 445 U.S. 573 (1980), the Court held that absent exigent circumstances, the Fourth Amendment prohibits warrantless, nonconsensual entry into a suspect's home to make a felony arrest, notwithstanding the existence of probable cause. *Id.* at 585–86.

At the intersection of *Watson* and *Payton* is the Supreme Court's decision in *United States v. Santana*, 427 U.S. 38 (1976), where the Court was presented with the question of whether a suspect arrested just inside her open front door "was in a public place" at the time of her arrest. *Id.* at 42. The Supreme Court ultimately held that the arrest occurred in a public place, reasoning as follows:

> She was not in an area where she had any expectation of privacy. What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection. She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house.

*Id.* (cleaned up). The Supreme Court also rejected the proposition that the suspect's "act of retreating into her house could thwart an otherwise proper arrest." *Id.*

In the decades following these three decisions, the Tenth Circuit has relied on *Santana* for the proposition that police may arrest suspects without a warrant when the suspect is located on the threshold of their home. *See McKinnon v. Carr*, 103 F.3d 934, 935–96 (10th Cir. 1996) (affirming dismissal of a wrongful arrest claim where officers conducted a warrantless arrest after the suspect opened up his front door in response to the officers' knocking); *Soza v. Demsich*, 13

F.4th 1094, 1106 (10th Cir. 2021) (affirming dismissal of wrongful arrest claim because *Santana* "remains binding precedent" and upholding "warrantless entry into the threshold of one's home—like the front porch—for the purpose of a seizure").

Applying *Santana* and its progeny to the present case demonstrates that Officer Evangelista properly and lawfully arrested Plaintiff. According to the Complaint, Plaintiff waited for the Officers "at the front entryway as they conducted their investigations."[8] By so standing, Plaintiff "was as exposed to public view, speech, hearing, and touch as if [he] had been standing completely outside [his] house." *See Santana*, 427 U.S. at 42. Plaintiff spoke to Officer Evangelista "from his entryway with the front door open."[9] When Plaintiff's and Officer Evangelista's discussion turned to disagreement, Plaintiff began to "step[] further back into his house," and Officer Newell commanded Plaintiff not to retreat.[10] Then Officer Evangelista stepped forward, grabbed Plaintiff's arm, pulled Plaintiff out of the home's entryway, and arrested Plaintiff.[11] Where Plaintiff stood in the entrance of his house and spoke to the Officers for an extended time, he had no reasonable expectation of privacy such that the Officers were required to obtain a warrant to effect his arrest. *See Santana*, 427 U.S. at 42. Accordingly, no constitutional violation occurred.

But even assuming that a constitutional violation had occurred, the Officers are still entitled to dismissal of Plaintiff's causes of action for violation of the 4th and 14th Amendments of the

---

[8] ECF 1 ¶ 47 (p. 7).
[9] *Id.* ¶ 48 (p. 7).
[10] *Id.* ¶¶ 50–51 (p. 8).
[11] *Id.* ¶¶ 47–48, 52–53 (p. 8).

United States Constitution and Article I, Section 14 of the Utah Constitution and for failure to intervene under the doctrine of qualified immunity and its state-law equivalent.[12]

Qualified immunity shields officers from liability unless a plaintiff can demonstrate that the officers' conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To carry this burden, Plaintiff must identify a "controlling authority" from the Supreme Court or Tenth Circuit that clearly establishes that the Officers violated Plaintiff's federal rights. *See Wilson v. Layne*, 526 U.S. 603, 617 (1999). Alternatively, Plaintiff can prove that the right is clearly established by showing that "at least six circuits ha[ve] recognized the right at issue." *See Irizarry v. Yehia*, 38 F.4th 1282, 1295 (10th Cir. 2022). The facts of any controlling authorities must be analogous to those at issue here to "a high degree of specificity." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Absent such specificity, the obvious "unlawfulness of the officers' conduct [would] not follow immediately from the conclusion that the rule was firmly established," and the Officers could not reasonably have been expected to apply the rule as they dealt with Plaintiff. *Id.* at 64 (cleaned up). In other words, Plaintiff must point toward a controlling authority or authorities

---

[12]  To recover damages under the Utah Constitution, plaintiffs must demonstrate, among other things, they suffered a "flagrant violation" of their constitutional rights. *Spackman ex rel. Spackman v. Board of Educ. of Box Elder County School Dist.*, 2000 UT 87, ¶ 23, 16 P.3d 533. Both this Court and the Tenth Circuit have previously held that officers are not liable for a "flagrant" violation under the Utah Constitution unless the plaintiff identifies on-point precedent demonstrating that the officers' conduct violated the constitutional provision at issue. *Porter v. Daggett County*, Utah, 587 F. Supp. 3d 1105, 1128 (D. Utah 2022) (citing *Brown v. Larsen*, 653 F. App'x 577, 578 (10th Cir. 2016)). That standard is analogous to the clearly-established inquiry for qualified immunity under federal law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, the Court's qualified immunity analysis set forth herein applies with equal force to Plaintiff's claim under the Utah Constitution.

that have held Officers acted unconstitutionally in circumstances analogous to those that faced Officer Evangelista and Officer Newell.

Plaintiff has not carried this burden. Plaintiff cites only one decision from the Tenth Circuit, *United States v. Reeves*, 524 F.3d 1161 (10th Cir. 2008), and one Utah decision, *State v. Beavers*, 859 P.2d 9 (Utah Ct. App. 1993). First, *Reeves* does not apply because, unlike *Reeves*, Plaintiff voluntarily opened his door, interacted with the Officers in a public place, and then later remained there in response to the Officers' lawful orders. 524 F.3d at 1165, 1169–70; *see also Santana* 427 U.S. at 42. Second, *Beavers* is irrelevant to Plaintiff's federal constitutional claims because it is a state court decision and the Tenth Circuit considers only federal caselaw in qualified immunity cases. *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010). Regardless, *Beavers* does not serve to show a clearly established or flagrant violation of constitutional rights here because that case dealt with warrantless entries into dwellings on the basis of *reasonable suspicion* alone, *see* 859 P.2d at 17, and there is no dispute that the Officers had probable cause to arrest Plaintiff in this case.

In sum, under *Santana*, *McKinnon*, and *Soza*, Plaintiff's arrest was initiated in a public place when he stood in his open doorway speaking with the Officers and was commanded to stop when he attempted to retreat inside the residence. As such, Officer Evangelista's brief intrusion into the vestibule of Plaintiff's residence to effectuate an arrest with probable cause did not violate Plaintiff's clearly established rights. Therefore, Plaintiff's causes of action against the Officers for violations of the 4th and 14th Amendments of the United States Constitution and Article I, Section 14 of the Utah Constitution and for failure to intervene are dismissed.

## II. PLAINTIFF DID NOT SUFFICIENTLY PLEAD A *MONELL* CLAIM.

Plaintiff brought a municipal liability claim against Lone Peak under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that municipalities are not subject to vicarious liability in § 1983 actions. *Id.* at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Even assuming Plaintiff had alleged a constitutional violation, Plaintiff still failed to plead a claim under *Monell*.

To state a claim for municipal liability under *Monell*, one must allege that their constitutional rights were violated as a result of one of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification of such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (cleaned up). This requires Plaintiff to provide a "description of a policy or custom and its relationship to the underlying constitutional violation" with "specific facts." *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022).

Further, for a municipal liability claim to be based on a "single-incident failure-to-train" to proceed, Plaintiff must allege "(1) the existence of a municipal policy or custom involving deficient training; (2) an injury caused by the policy that is obvious and closely related; and (3) the

municipality's adoption of the policy or custom with deliberate indifference to the injury." *Valdez v. Macdonald*, 66 F.4th 796, 816–17 (10th Cir. 2023) (cleaned up). For deliberate indifference, the allegations must show "(i) the municipality's policymakers know to a moral certainty that their employees will confront a given situation; (ii) the situation presents the employee with a difficult choice of the sort that training or supervision will make less difficult; and (iii) the wrong choice will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 817 (cleaned up).

Here, Plaintiff has alleged the following facts bearing on municipal liability:

- Chief Gwilliam, "as the chief of police and policymaker for Alpine City has a custom, pattern, practice, and/or procedure of hiring police officers who he knows are unfamiliar with protections provided by state and federal constitutions, laws, and policies."[13]

- Chief Gwilliam failed "to implement adequate policies regarding the proper training and instruction to protect constitutional rights, specifically regarding the various protections regarding search and seizure and the duty of another officer to protect citizen rights."[14]

- When Lone Peak officers violate the rights of citizens, Chief Gwilliam "ratifies their unconstitutional acts and assists in covering up the officer's bad actions by charging members of the community with crimes, who fall victim to these officers' bad actions."[15]

These allegations do not identify a policy or custom of Lone Peak, let alone a policy or custom involving deficient training, nor do they show that a specific policy or custom caused any constitutional harm.

In his Opposition, Plaintiff points to his allegations that "Defendants were obligated to train these police officers regarding constitutional protections as well as state and federal laws" and that

---

[13] ECF 1 ¶ 62 (p. 13).
[14] *Id.* ¶ 64 (p. 14).
[15] *Id.* ¶ 65 (p. 14).

"Defendants not only failed to train but failed to discipline after they were aware of the Defendants [sic] conduct and Plaintiffs [sic] injuries."[16] But these allegations of "general deficiencies" without more does not show that the "training program closely related to his ultimate injury." *Keith v. Koerner*, 843 F.3d 833, 838–39 (10th Cir. 2016) (cleaned up). The allegations are therefore insufficient to permit the Court to infer any deliberate indifference.

Based on the foregoing, Plaintiff has not sufficiently alleged a claim under *Monell*, so the municipal liability claim against Lone Peak is dismissed.

## ORDER

Having considered the parties' briefs, the relevant law, and Defendants' oral argument, the Court GRANTS Defendants' Motion to Dismiss. [ECF No. 32.] The Complaint is dismissed in its entirety without prejudice. No further Order is necessary as to this matter.

Dated this 5th day of September 2025.

By the Court:

Ann Marie McIff Allen
United States District Judge

---

[16] ECF No. 36 ¶¶ 103–04.